UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

                        Plaintiff,   ORDER

        - against -              CV 2004-4237 (SLT)(MDG)

NEW YORK METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

                       Defendants.
- - - - - - - - - - - - - - - - - - - -X  03-CV-02139-SLT-MDG
                                                04-CV-02294-SLT-MDG
This Order pertains to:           04-CV-02331-SLT-MDG
                                                05-CV-03341-SLT-MDG
    ALL CASES.                      05-CV-05477-SLT-MDG

- - - - - - - - - - - - - - - - - - - -X

    In these six consolidated actions, the United States and the individual plaintiffs, who are Muslim and Sikh TA employees, allege that the New York Metropolitan Transportation Authority and the New York City Transit Authority (collectively the "TA") discriminated against them and similarly situated employees who wear religious head coverings and failed to accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. By letter dated June 22, 2006, plaintiffs move to compel the TA to produce documents from TA manager Jennifer Sinclair's[1] files withheld on grounds of

---

[1] Although from prior submissions it appears that Ms. Sinclair holds a law degree, it is undisputed that she does not practice law on behalf of the TA nor provide legal advice. See ct. doc. 86 at 3; ct. doc. 88.

attorney-client privilege and/or attorney work product. See Letter to Court from Diana L. Embrey dated June 22, 2006 (ct. doc. 104 in 04-CV-4237).

After conducting an in camera inspection of the documents in dispute, I grant in part and deny in part plaintiffs' motion.

## DISCUSSION

"To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996); see Fisher v. United States, 425 U.S. 391, 403 (1976). Draft documents ultimately sent to third parties retain their privilege "if they were prepared for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version." Renner v. Chase Manhattan Bank, 1998 No. 98 CIV. 926, 2001 WL 1356192, at *8 (S.D.N.Y. Nov. 1, 2001); see McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 255 (N.D. Ill. 2000); Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 632 (M.D. Pa. 1997) ("Drafts of documents . . . circulated to counsel for comments on legal issues are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not

included in the final version"); U.S. Postal Serv. v. Phelps Dodge Refining Co., 852 F. Supp. 156, 163 (E.D.N.Y. 1994).

Federal Rule of Civil Procedure 26(b)(3) embodies the federal work product doctrine which provides qualified protection to "documents and tangible things... prepared in anticipation of litigation or for trial" from discovery. Fed. R. Civ. P. 26(b)(3); Constr. Prods., 73 F.3d at 473; Bogan v. Northwestern Mut. Life Ins. Co., 163 F.R.D. 460, 462 (S.D.N.Y. 1995); Stryker Corp. v. Intermedics Orthopedics, Inc., 145 F.R.D. 298, 301 (E.D.N.Y. 1992); see Hickman v. Taylor, 329 U.S. 495, 511 (1947). Documents prepared in anticipation of litigation are those that, "in light of the nature of the document and the factual situation in the particular case . . . can fairly be said to have been prepared or obtained because of the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998).

The burden of establishing the applicability of both attorney-client privilege and the attorney work product doctrine rests with the party asserting it. See Constr. Prods., 73 F.3d at 473.

Documents labeled A-6, F-3, F-19, F-22, and F-23

These documents are draft uniform policy bulletins that were submitted for review by attorneys in either the Office of Labor Relations or the Law Department in response to an arbitrator's finding that a prior uniform policy bulletin was improperly written. See ct. doc. 106 at 2, Exhs. A at ¶¶ 2, 4 (Declaration

of David Hyland, Senior Director in the TA's Office of Labor Relations), B at ¶ 5 (Declaration of K. Jennifer Sinclair, Chief Transportation Officer in the TA's Department of Buses). These documents need not be produced since they are draft documents that were submitted to attorneys for the purpose of obtaining legal advice. See Renner, 2001 WL 1356192, at *8; McCook Metals, 192 F.R.D. at 255; Andritz Sprout-Bauer, Inc., 174 F.R.D. at 632; U.S. Postal Serv., 852 F. Supp. at 163. Although the uniform policy bulletins were intended to be, and ultimately were, released to TA employees, it is clear from review that the client "still intend[ed] that his communications with his attorney prior to the finalization of the document remain confidential." In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 474 (S.D.N.Y. 1996); see In re Grand Jury Subpoena Duces Tecum Dated September 15, 1993, 731 F.2d 1032, 1037 (2d Cir. 1984).

Documents labeled D-2 and F-18

These documents are internal memoranda between non-attorney TA officials commenting on the draft uniform policy bulletins discussed above. See ct. doc. 106 at 2, Exh. B at ¶ 5. Unlike the draft bulletins themselves, there is no indication that these documents were submitted to TA attorneys for the purpose of obtaining legal advice. See Constr. Prods., 73 F.3d at 473. "Work by a non-attorney, undertaken without a request by the attorney to assist her, is not within the attorney-client privilege." Verizon Directories Corp. v. Yellow Book USA, Inc.,

No. 04-CV-251, 2004 WL 4054842, at *3 (E.D.N.Y. July 22, 2004); Byrnes v. Empire Blue Cross Blue Shield, No. 98 Civ. 8520, 1999 WL 1006312, at *4 (S.D.N.Y. Nov. 4, 1999). Therefore, these memorandums are not protected by any privilege and must be produced.

Documents labeled B-3, B-4, F-2, F-27, and F-28

These documents contain information gathered for the purpose of defending the TA in arbitration proceedings at the request of David Hyland, a TA attorney in its Office of Labor Relations. See ct. doc. 106 at 2, Exhs. A at ¶ 3, B at ¶¶ 3, 4. Such documents are protected under the attorney work product doctrine. See Adlman, 134 F.3d at 1202. However, although the compilations of information contained in B-3, B-4 and F-2, which were created in connection with the arbitration, may be protectible as work product, the underlying information regarding enforcement of the policy regarding headwear is not sheltered from disclosure in response to any proper discovery request that may have been propounded.

Documents labeled B-5, B-6, B-7, B-8, F-17, and F-26

These documents consist of e-mail messages with attachments but the TA has produced only the e-mail messages themselves. Although the TA apparently does not assert any privilege in the attachments,[2] it has not produced the attachments because the hard

---

[2] Although the TA originally asserted that documents F-17 and F-26 contained trial preparation material, see ct. doc. 104,
(continued...)

copies were not contained in Ms. Sinclair's hard copy file.  See
ct. doc. 106 at 1.  Since it is undisputed that the United
States's discovery requests properly included a request for copies
of electronic documents, these attachments must be produced.  See
ct. doc. 104 at 2 n.2; see also Local Civil Rule 26.3 (in
discovery requests, the term "document" includes "electronic or
computerized data compilations"); Fed. R. Civ. P. 34(a) (party may
request "electronically stored information").

Document labeled D-1

This document is a memorandum between non-attorney TA officials attaching information concerning the uniform policies of other transportation providers not affiliated with the TA.  See ct. doc. 106 at 2, Exh. C. at 1-2 (Declaration of Richard Schoolman).  The TA claims that the information is privileged because the other agencies' policies "could be of use in relating to the drafting of bulletins for Mr. Hyland's review."  See ct. doc. 106, Exh. C at 1.  However, the TA has not established that this document was prepared in anticipation of litigation nor is it a confidential communication between a client and its attorney made for the purpose of obtaining or providing legal advice.  See Constr. Prods., 73 F.3d at 473.  Nor is there any indication that

---

[2](...continued)
Exh. 1 at 3-4, it subsequently produced the e-mails at issue on June 28, 2006 without raising any claim of privilege as to the attachment.  See Letter of Diane Embrey dated July 6, 2006 (ct. doc. 107) at 1 n.1.  The attachment at issue is described as the final version of Uniform Requirements, which was to be discussed with the union.  As such, it would not constitute work product.

the information was compiled at the request of an attorney.  See Verizon, 2004 WL 4054842, at *3; Byrnes, 1999 WL 1006312, at *4.  Moreover, the uniform policies of other employers are not protected since the attorney-client privilege "protects communications rather than information."  In re Grand Jury, 731 F.2d at 1037; see Verizon, 2004 WL 4054842, at *3; SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC, No. 01 Civ. 9291, 2002 WL 1455346, at *4 (S.D.N.Y. July 3, 2002).  Finally, the information is relevant as the TA concedes that it considered these specific uniform policies of other employers in formulating its own policies.  See ct. doc. 106 at 2, Exh. C at 1.

Documents labeled F-5 and F-8

Defendants represent that these documents were already produced on May 26, 2006, therefore, the motion to compel these documents is moot.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel is granted in part and denied in part as set forth above.

**SO ORDERED.**

Dated:    Brooklyn, New York
          December 29, 2006

                                        /s/
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE